Hans W. Herb, Esq. SBN 136018
LAW OFFICES OF HANS W. HERB
P. O. Box 970
Santa Rosa, CA  95402
707/576-0757
707/575-0364 Fax

Counsel for Plaintiff
Pamela Denise Pringle

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA DENISE PRINGLE,<br><br>Plaintiff,<br><br>v.<br><br>BRENT CARDALL, COUNTY OF YOLO, YOLO COUNTY PROBATION DEPARTMENT, ANTHONY PENNELLA, SANDY JONES, AMANDA GENTRY, NOEL BARLOW-HUST, JUDY MESICK, CINDY McDONALD, MARK ALAN KUBINSKI, ELISA SUE MAGNUSON, JOHN DOES 1-20, and JANE DOES 1-20, inclusive,<br><br>Defendants. | No.  2:18-cv-02035<br><br>**FIRST AMENDED CIVIL RIGHTS COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL**<br><br>**42 USC Section 1983**<br>**1st, 5th, 8th and 14th Amendments**<br>**California Penal Code 136.1(a)** |

Plaintiff PAMELA DENISE PRINGLE ("Plaintiff"), through her undersigned counsel and

upon information and belief, alleges the following.

## INTRODUCTION

1.     "The rights of every man are diminished when the rights of one man are

threatened" (John F. Kennedy) and "the highest mode of corruption is the abuse of power" (Auliq

Ice).   This case is essentially about the abuse of power, initially undertaken by Idaho state

officials, who conspired amongst themselves to harass and traumatize Plaintiff and deprive her of the right to equal protection of the law and due process, in retaliation for Plaintiff's filing of numerous grievances and several lawsuits while she was serving a prison term in the state of Idaho.  The Idaho state Defendants (Sandy Jones, Amanda Gentry, Noel Barlow-Hust, Cindy McDonald, Judy Mesick, Mark Alan Kubinski and Elisa Sue Magnuson), further retaliated against Plaintiff for filing a civil rights suit after her release from prison, (*Pringle v. Gentry, et al.*, U.S. District Court, Eastern District of California Case No. 2:17-cv-2206, filed October 23, 2017), by conspiring with the California Defendants (Brent Cardall, Anthony Pennella, and Does 1-50, individually, as well as the municipal Defendants Yolo County and the Yolo County Probation Department) to violate Plaintiff's parole without due process or equal protection, in an attempt to detain Plaintiff, return her to prison and terminate the lawsuit.

## **PARTIES**

2.      Plaintiff PAMELA DENISE PRINGLE is a United States citizen residing in the State of California, County of Yolo.

3.      Defendant BRENT CARDALL is and was at all times mentioned herein the Chief Probation Officer for the Yolo County Probation Department in Yolo County, California ("YCPB").  Upon information and belief, Defendant Cardall is responsible for the administration of the Yolo County Probation Department, and for setting the policies, customs and practices of the Department, as well as for training of its probation officers. At all relevant times, Defendant Cardall acted under color of law within the course and scope of his duties as an official of the County of Yolo and is personally responsible for the deprivation of Plaintiff's civil rights outlined herein.  Defendant Cardall is sued in both his individual and official capacities.

4.      Defendant COUNTY OF YOLO ("Yolo County") is a municipal entity, organized and existing under the laws of the state of California.  Defendant YOLO COUNTY PROBATION DEPARTMENT is an agency of Yolo County.   Defendant Yolo County is responsible for the actions, omissions, policies, procedures, practices and customs of its various employees, agents and agencies, including the YOLO COUNTY PROBATION DEPARTMENT.  At all times relevant to the acts alleged herein, Defendant Yolo County was responsible for ensuring that the actions, omissions, policies, procedures, practices and customs of the Yolo County Probation Department and its employees and agents complied with California state laws, laws related to the Interstate Commission for Adult Offender Supervision, and the Constitution of the United States.

5.      Defendant ANTHONY PENNELLA is and was at all times mentioned herein the state Commissioner and Compact Administrator for the California Interstate Commission for Adult Offender Supervision ("ICAOS") in Sacramento, California.   Upon information and belief, Defendant Pennella is responsible for administering the Interstate Compact for probationers and parolees transferring supervision of their probation or parole from or to California, including administration of the California Interstate Compact Offender Tracking System ("ICOTS"), and for setting the policies, customs and practices of the Department, as well as for training and supervision of the Deputy Compact Commissioner and the ICOTS Probation and Parole Administrators working within the Department.

6.      ICOTS is a web-based system that facilitates the transfer of supervision for probationers and parolees from one state to another. These activities include processing Interstate Compact Applications, and providing notifications of departures, arrivals, progress, violations, and case closures.  ICOTS also serves as a conduit for miscellaneous communication exchanges and supervision policies for offenders under supervision in another state.

7.      At all relevant times, Defendant Pennella acted under color of law within the course and scope of his duties as an official of the state of California and is personally responsible for the deprivation of Plaintiff's civil rights outlined herein.  Defendant Pennella is sued in both his individual and official capacities.

8.      Defendant SANDY JONES is and was at all times mentioned herein the Executive Director for the Idaho Commission of Pardons and Parole in Boise, Idaho. Upon information and belief, Defendant Jones is responsible for the administration of Idaho's parole system for all offenders convicted of a felony in Idaho and sentenced to prison time, including the responsibility for overseeing the Idaho Parole hearing officers and Commissioners who make decisions regarding the granting or revocation of parole, for establishing special conditions of parole, and for issuing Parole Commission Warrants for parole violations.   At all relevant times, Defendant Jones acted under color of law within the course and scope of her duties as an official of the state of Idaho and is personally responsible for the deprivation of Plaintiff's civil rights outlined herein. Defendant Jones is sued in both her individual and official capacities.

9.      Defendant AMANDA GENTRY is and was at all times mentioned herein the Warden of the Pocatello Women's Correction Center in Pocatello, Idaho ("PWCC"). Upon information and belief, Defendant Gentry is responsible for the administration of PWCC, which is Idaho's only maximum-security women's prison.  At all relevant times, Defendant Gentry acted under color of law within the course and scope of her duties as an official of the state of Idaho and is personally responsible for the deprivation of Plaintiff's civil rights outlined herein.   Defendant Gentry is sued in both her individual and official capacities.

10.     Defendant NOEL BARLOW-HUST is and was at all times mentioned herein the Warden of the South Boise Women's Correction Center in Boise, Idaho ("SBWCC").   Upon information and belief, Defendant Barlow-Hust is responsible for the administration of SBWCC, which is a minimum-security women's prison.  At all relevant times herein, Defendant Barlow-Hust acted under color of law within the course and scope of her duties as an official of the state of Idaho and is personally responsible for the deprivation of Plaintiff's civil rights outlined herein. Defendant Barlow-Hust is sued in both her individual and official capacities.

11.     Defendant CINDY MCDONALD is and was at all times mentioned herein the Interstate Coordinator for the Idaho Department of Corrections Central Office in Boise, Idaho ("IDOC").  Upon information and belief, Defendant McDonald is responsible for coordinating the transfer of Idaho prisoners to prisons in other states and is also the administrator of the Interstate Agreement on Detainers for IDOC.  At all relevant times, Defendant McDonald acted under color of law within the course and scope of her duties as an official of the state of Idaho and is personally responsible for the deprivation of Plaintiff's civil rights outlined herein.  Defendant McDonald is sued in both her individual and official capacities.

12.     Defendant JUDY MESICK is and was at all times mentioned herein the Deputy Interstate Compact Commissioner and the state ICOTS Administrator for the Idaho Interstate Commission for Adult Supervision in Boise, Idaho.   Upon information and belief, Defendant Mesick (under the direction of the Idaho Interstate Compact Commissioner) is responsible for administering the Interstate Compact for probationers and parolees transferring supervision of their probation or parole from or to Idaho, including administration of the Idaho Interstate Compact Offender Tracking System ("ICOTS"), as well as for training and supervision of the Idaho Interstate Compact Coordinators and the Interstate Probation and Parole officers working within the Department, including NICHOLE CASE.

13.     At all relevant times, Defendant Mesick acted under color of law within the course and scope of her duties as an official of the state of Idaho and is personally responsible for the deprivation of Plaintiff's civil rights outlined herein.  Defendant Mesick is sued in both her individual and official capacities.

14.     Defendant MARK ALAN KUBINSKI is and was at all times mentioned herein an attorney licensed to practice in the state of Idaho, employed by Idaho Attorney General's office as a Deputy Attorney General assigned to IDOC and the Idaho Parole Commission.  Upon information and belief, Defendant Kubinski is essentially an IDOC official, as he maintains an office at the IDOC headquarters in Boise, Idaho, rather than at the office of the Idaho Attorney General and is responsible for overseeing and administering all legal matters within the IDOC and Parole Commission.  At all relevant times, Defendant Kubinski acted under color of law within the course and scope of his duties as an official of the state of Idaho and is personally responsible for the deprivation of Plaintiff's civil rights outlined herein.  Defendant Kubinski is sued in both his individual and official capacities.

15.     Defendant ELISA SUE MAGNUSON is and was at all times mentioned herein an attorney licensed to practice in both Idaho and California, employed by the Idaho Attorney General's office as a Deputy Attorney General for the state of Idaho. Defendant Magnuson was assigned by the Idaho Attorney General's office to represent Defendants Jones, Gentry, McDonald, Mesick and Kubinski in the matter entitled *Pringle v. Gentry*, et al., U.S. District Court, Eastern District of California Case No. 2:17-cv-2206, filed October 23, 2017.  At all relevant times, Defendant Magnuson acted under color of law within the course and scope of her duties as an official of the state of Idaho and is

personally responsible for the deprivation of Plaintiff's civil rights outlined herein.  Defendant Magnuson is sued in both her individual and official capacities.

16.     The true names of Defendant DOES 1-50, inclusive are unknown to Plaintiff, who therefore sues them by fictitious names.  Plaintiff alleges that Defendant DOES 1-50, inclusive, are employees of either the Idaho Commission for Pardons and Parole, Idaho Department of Correction, Idaho Attorney General's office, Idaho Interstate Commission for Adult Supervision, California Interstate Commission for Adult Supervision, County of Yolo, Yolo County Probation Department other Idaho or California governmental entities responsible in some way for the injuries and damages suffered by Plaintiff.    At all relevant times herein, these unnamed Defendants were acting under "color of state law" and are sued in both their individual and official capacities.

17.     Plaintiff will amend her complaint to state the true names and capacities of Defendant DOES 1-50, inclusive, when they have been ascertained.

18.     Each named and DOE defendant was the agent or employee of co-defendants, and in doing the things alleged, were acting within the scope and course of such agency or employment and with the actual or implied permission, consent, authorization and approval of said co-defendant.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343 in that the controversy arises under the United States Constitution and under 42 U.S.C. §1983. This Court has authority to award attorney fees pursuant to 42 U.S.C. §1988. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

20.     This Court has supplemental jurisdiction over Plaintiff's pendent state law claims under 28 U.S.C. §1367(a), as those claims arise out of the same transactions and occurrences as Plaintiff's federal question claims.

21.     Venue is proper in the United States District Court for the Eastern District of California under 28 U.S.C. §1391(b)(2) because a substantial portion of the acts and/or omissions described in this Complaint, and their resulting harm to Plaintiff, occurred in this District.

22.     Venue is also proper in this judicial district under 28 U.S.C. §1391(b)(3) because Plaintiff resides within this District, and three or more of the Defendants reside and are employed within this District.

## FACTUAL ALLEGATIONS

Failure to Follow the Interstate Agreement on Detainers

23.     The Interstate Agreement on Detainers Act ("IAD") is a Federal statute that was enacted into law on December 9, 1970 [18 U.S.C., Appendix].  The Act was incorporated into Idaho law in 1971 as an Interstate Compact, codified as Idaho Code §19-5001.  The Act was incorporated into California law with the 1970 Federal enactment, codified as Penal Code §1389.

24.     Written in plain language, the IAD mandates that where a detainer has been lodged against a prisoner, upon request of that prisoner for relief under the IAD, the Warden of the correctional facility in which the prisoner is being held *must* process the prisoner's IAD request and promptly forward it to the jurisdiction which lodged the detainer, along with a certification of inmate status and offer to deliver temporary custody of the inmate to the receiving jurisdiction, enabling the prisoner to promptly resolve the detainer.

25.     Plaintiff, while serving a term of imprisonment at Idaho Department of Correction Pocatello Women's Correctional Center (PWCC) made multiple and valid

requests to Defendant Warden Amanda Gentry between May 25, 2016 and July 26, 2016, for the Warden to process a detainer placed against Plaintiff by California, pursuant to the IAD.

26.     Plaintiff had been informed on May 25, 2016, by her PWCC case manager that a detainer had been lodged against her by California for an untried pending felony, and that she would be held at PWCC, a maximum-security prison, rather than being transferred to a minimum-security prison, due solely to the detainer, as Plaintiff's security classification allowed for her to be held at one of IDOC's minimum-security facilities.

27.     Plaintiff made several requests to PWCC and IDOC administrators between May 25, 2016, and July 25, 2016, to receive a copy of the detainer lodged against her; however, her requests were refused.

28.     Defendant Warden Amanda Gentry personally refused to process Plaintiff's requests for disposition under the IAD, notwithstanding the clear and plain language of Idaho Code §19-5001, which mandates wardens to promptly process prisoner's IAD requests, Plaintiff's repeated restatement of the statutory law and its mandates directly to Defendant Gentry, and the fact that Plaintiff filed a detailed grievance on May 26, 2016, regarding her refused IAD requests, which clearly indicated the Warden's responsibilities under the IAD.

29.     Instead, Defendant Warden Gentry initially directed that Plaintiff forward the IAD request to Defendant Cindy McDonald.  Defendant Gentry subsequently refused to process Plaintiff's follow-up IAD requests by claiming ignorance of the matter.

30.     Defendant Cindy McDonald personally refused to process Plaintiff's requests under the IAD on three separate occasions between May 26, 2016 and July 27, 2016.

31.     In addition, on July 8, 2016, Plaintiff forwarded a letter directly to Defendant Kubinski, who is specifically paid by Idaho taxpayers to diligently, competently and ethically advise Defendants on the correct application of statutory and case law to ongoing penological operations.  Plaintiff's letter explained in detail her attempts to have her California detainer processed under State and Federal law and requested that Defendant Kubinski intervene and

direct Defendant Warden Gentry to process Plaintiff's IAD request.  Defendant Kubinski personally failed to do so.

32.    On July 14, 2016, apparently wearied by Plaintiff's repeated attempts to obtain a copy of the detainer lodged against her and pursue her rights under the IAD, IDOC officials transferred Plaintiff to South Boise Women's Correction Center (SBWCC), a minimum-security women's prison in Boise, Idaho.

33.    Immediately upon Plaintiff's arrival at SBWCC, she was thrown into administrative segregation (i.e. "the hole") without explanation.

34.    On July 15, 2016, Plaintiff was given written notification from IDOC officials at SBWCC that she was being held in administrative segregation because of a California detainer lodged against her that prohibited her from being at a minimum-security prison.

35.    On July 16, 2016, Plaintiff sent a request to SBWCC Warden Noel Barlow-Hust, asking to be served with a copy of the detainer and for the Warden to process Plaintiff's request for disposition of her detainer under the IAD.

36.    Between July 14, 2016, and July 20, 2016, Plaintiff sent Defendants Barlow-Hust and McDonald, and other IDOC and SBWCC officials, numerous written inmate forms requesting access to legal telephone calls and to the facility paralegal/access to courts system, as well as for processing of Plaintiff's detainer pursuant to the IAD.  All requests were ignored or denied.

37.    On or about July 20, 2016, Warden Barlow-Hust forwarded a response specifically denying Plaintiff's request for relief under the IAD.

38.    Plaintiff remained in the hole at SBWCC without access to courts, or the ability contact her attorney or the ACLU, until she was transferred back to PWCC on July 21, 2016, where she was immediately placed in a locked-down, segregated detention area (near death row) for nearly three weeks before being moved to general housing.

39.     On July 26, 2016, Plaintiff was finally served by an IDOC records clerk with an official copy of a California Detainer from Yolo County, IDOC Detainer Log No. 0716070.  At the time of service, Ms. Long informed Plaintiff that IDOC would not process any request from Plaintiff for disposition of the detainer under the IAD, according to a directive that Ms. Long had received from Defendants Cindy McDonald and Mark Alan Kubinski.

40.     Nevertheless, on July 26, 2016, Plaintiff submitted another request to Defendant Warden Gentry for disposition of her detainer under the IAD, after Plaintiff was served with a copy of the officially-lodged detainer by the IDOC records clerk.

41.     On July 27, 2016, Case Manager Bowers called Plaintiff into an interview room where two correctional officers stood on either side of Plaintiff in an intimidating fashion, constantly glaring at Plaintiff.  Plaintiff was not allowed to move or sit, but the entire time was required to be ensconced between the two officers in a tiny portion of the room.  During that "interview", Ms. Bowers handed Plaintiff a written response to Plaintiff's inmate request form Plaintiff submitted on July 26, 2016, asking for more information about her California detainer and for disposition of same under the IAD.  The response stated "You need to stop.  Any further concerns on this matter will be handled with disciplinary actions."   The written response form was signed by Case Manager Bowers.

42.     Ms. Bowers then informed Plaintiff that it was not Ms. Bowers, but instead was Defendants Warden Gentry and Mark Alan Kubinski who were behind the response.  They had instructed Ms. Bowers to tell Plaintiff that Plaintiff was to cease speaking with anyone about detainer issues and to stop submitting any written requests forms, grievances or lawsuits about the detainer/IAD issue, or Plaintiff would be thrown in the hole for the duration of her stay with IDOC and/or suffer other disciplinary consequences.

43.     Ms. Bowers appeared extremely nervous and agitated during the July 27, 2016, meeting with Plaintiff.  Specifically, Plaintiff noticed that Ms. Bowers' hands were shaking badly

and that she appeared very frightened.  Ms. Bowers continually used the terminology "I was told to tell you…" and "I'm supposed to tell you… ."

44.     After the July 27, 2017 "meeting" with Plaintiff's case manager, Plaintiff made no further requests to IDOC employees for disposition of her California detainer, based on Defendants' threats of retaliation which were communicated to her by Case Manager Bowers.[1]

45.      On July 28, 2016, Plaintiff received a written response to a grievance and grievance appeal that Plaintiff had submitted to IDOC concerning the IAD issues, signed by Defendant Cindy McDonald, which essentially stated that Plaintiff's request for disposition of her detainer would not be processed by anyone at IDOC, at any time.

46.     On August 5, 2016, Plaintiff received a written response from IDOC Deputy Chief of Prisons administrator Shannon Cluney which stated that IDOC would do nothing more for Plaintiff with regard to her detainer disposition request under the IAD and that Plaintiff had "exhausted her departmental remedies."

47.     Plaintiff in fact was never afforded her rights under the IAD by the Idaho Defendants responsible for processing Plaintiff's IAD requests.

48.     Plaintiff contends that the Idaho Defendants conspired with one or more of the California named and/or Doe Defendants to deprive Plaintiff of her rights under the Interstate Agreement on Detainers, that the Idaho Defendants did so due to personal animus and for retaliatory reasons, and that the California Defendants acted out of a desire to avoid having to uphold the provisions of the IAD—namely, the Speedy Trial provision and the potential for a dismissal of the case if the Yolo County Defendants did not comply with the strict time limits for bringing the case to trial specified in the text of the IAD.

49.     On November 3, 2017, Plaintiff was transferred from Idaho to the Yolo County Detention Facility on the alleged authority of the California detainer lodged against her.

---

[1] In July 2016, Plaintiff prepared a handwritten Petition for Writ of Habeas Corpus against IDOC for failure to follow IAD laws.  Filing of the suit was delayed for weeks by IDOC's access to court's paralegal and finally sent to the Court on August 3, 2016 (Bannock County Case No. CV-2016-0002757).  However, Plaintiff did not continue to prosecute the habeas suit, based on IDOC's threats against her, and the suit was eventually dismissed by the Court for inactivity.

50.     On February 27, 2017, Plaintiff filed a Motion in Yolo County Superior Court to Dismiss *People v. Pamela Pringle*, Yolo County Criminal Case No. 15-5511 (the untried felony case on which the detainer lodged against Plaintiff was based), for IDOC's failure to follow the IAD.

51.     On March 2, 2017, Defendant Cindy McDonald had a documented telephone conversation with Yolo County Assistant District Attorney Larry Eichele, who had contacted Ms. McDonald in preparation of his Opposition to Plaintiff's Motion to Dismiss.  During that conversation, Defendant Cindy McDonald intentionally misrepresented to ADA Larry Eichele that IDOC had denied all Plaintiff's requests for disposition under the IAD because (Defendant McDonald falsely claimed) at no time relevant to Plaintiff's IAD requests did Plaintiff have a detainer.

52.     Plaintiff is informed and believes, and thereupon alleges, that Defendant Cindy McDonald was advised to make the aforementioned misrepresentation of material fact to Yolo County ADA Larry Eichele by Defendant Kubinski.

53.     Because he had access to the records, ADA Eichele knew or should have known that the foregoing statement made by Defendant McDonald was false, but nevertheless included the misrepresentation in a Declaration in Opposition to Plaintiff's Motion to Dismiss he filed with the Yolo County Superior Court on March 3, 2017.

54.     The record clearly indicates that the Idaho Defendants admitted that Plaintiff had a valid detainer but had declined to process it under the IAD for retaliatory reasons, even after July 26, 2016-- the date the Idaho Defendants finally served Plaintiff with an official copy of the detainer.

55.     Plaintiff submitted documentary evidence to the Court through affidavits regarding the falsity of Defendant Cindy McDonald's statements included in Yolo County DA Eichele's Opposition papers, as well as proof of the validity of the detainer and evidence of the Idaho Defendants' willful refusal to process Plaintiff's numerous requests for relief under the IAD.

56.     On April 5, 2017, a hearing on Petitioner's Motion to Dismiss pursuant to the IAD was held in Yolo County Superior Court, Judge Timothy Fall presiding.  Yolo County ADA Eichele made no statements in opposition of Plaintiff's Motion to Dismiss at the hearing on the matter.

57.     After the hearing, Judge Fall ruled that IDOC officials, including the named Defendants herein, had violated Plaintiff's constitutional rights to procedural due process and equal protection of the law by willfully failing to follow a Federal law under which Plaintiff had rights; namely -- the Interstate Agreement on Detainers – and summarily dismissed the Yolo County criminal charge against Plaintiff.

58.     Thus, the Defendants' willful failure to abide by the IAD and allow Plaintiff the rights afforded to her under that law was confirmed on April 5, 2017, by a California Superior Court Judge after hearing the matter and a full review of briefs and supporting documents filed by Plaintiff's defense counsel and the prosecution in the criminal matter entitled "*People v. Pamela Pringle*, Yolo County Superior Court Case No. 15-5511."

Issuance of an Unlawful Transport Order

59.     Plaintiff was scheduled to be released from IDOC custody on November 1, 2016. Pursuant to Idaho law, the scheduled release onto parole was mandatory for that day.

60.     In October of 2016, IDOC case manager Pretzer had informed Plaintiff that if California transport officials were not at the facility by the morning of November 1, 2016, to transport Plaintiff on Plaintiff's detainer, Plaintiff would be released from the facility into the community because IDOC had no lawful authority to detain Plaintiff past November 1, 2016.

61.     On the morning of November 1, 2016, Plaintiff was escorted by an IDOC correctional officer to the intake center of PWCC for release processing.

62.     At the intake center, IDOC Correctional Officer Puckett processed Plaintiff's release from IDOC pursuant to the official Order for Confinement from the Parole Commission signed by Defendant Sandy Jones on May 5, 2016, authorizing Plaintiff's confinement at an

IDOC facility from May 5, 2016, through November 1, 2016 (a copy of which officer Puckett provided to Plaintiff at the time).

63.    After Officer Puckett processed Plaintiff's release from IDOC, he then produced a copy of a Transport Order drafted by Defendant McDonald, which indicated that Plaintiff was to be transported from PWCC to the Bannock County jail.   Mr. Puckett informed Plaintiff that he was just "doing his job" and that he had been directed by IDOC officials, including the named Defendants, to have an IDOC officer transport Plaintiff to the local county jail immediately to be held for eventual pick-up by California on Plaintiff's detainer.

64.    Plaintiff strenuously objected to the legality of the Transport Order, stating that it was both improper and illegal, as it authorized Plaintiff's transport to a detention facility after Plaintiff had been processed out of the IDOC facility onto parole, which effectively ended IDOC's jurisdiction to implement an order to transport an incarcerated inmate from an IDOC facility to any other detention facility.

65.    Mr. Puckett then contacted IDOC Records Clerk Carol Long, who stated that Defendant McDonald had written the Transport Order and that Defendant Kubinski had authorized the transaction, indicating that it was legitimate.

66.    Plaintiff was then forcefully escorted into an IDOC transport van and driven to Bannock County Jail by an IDOC transport officer, where Plaintiff was placed in a tiny locked-down holding cell in the booking area intended to be used for very short-term confinement while detainees were being processed into the jail.  The holding cell did not have a bed; and Plaintiff was not given bedding, hygiene supplies, change of clothing, access to showers, phone calls or medical care, and was given very little food.

67.    Plaintiff complained numerous times to the Officers in charge at Bannock County Jail about these conditions, but was repeatedly told that IDOC had informed Bannock County Jail that Plaintiff was to be held on a special, high security detainer-in-transport status, which required them to keep her in the temporary locked down confinement cell until she was picked up by

California, and not to offer any amenities.  Plaintiff was not able to sleep at all during her more than 48 hours of detention at Bannock County Jail, due to having only a small concrete bench in the cell, bright lights which remained on at all times, and extremely loud and constant noise and cacophony outside the cell.

68.     Plaintiff remained in the holding cell until the morning of November 3, 2016, when two private security officers hired by Yolo County arrived and transported Plaintiff back to California on the Yolo County detainer lodged against Plaintiff for Yolo County Criminal Case No. CR15-5511, *People v. Pamela Pringle*.

69.     During the 13-hour trip from Bannock County, Idaho to Yolo County, California, Plaintiff was not provided any food or water and became very ill, given her treatment the previous 48 hours at Bannock County Jail.  The security officers hired to transport Plaintiff informed Plaintiff that Yolo County policy mandated that they not provide any food or water to Plaintiff because she was being transported on the authority of the IDOC, who was required to provide food and water for Plaintiff or arrange for Bannock County Jail to do so, which did not occur.

Submission of a Fraudulent Interstate Compact Application

70.     On December 30, 2016, Plaintiff was conditionally released from the Yolo County detention facility (on Yolo County Case No. 15-5511, *People v. Pringle*), but was ordered to wear electronic ankle monitoring, to remain in Yolo County, and to be closely supervised by the Yolo County Probation Department until resolution of the Yolo County felony criminal case.

71.      On or about January 26, 2017, Idaho Interstate Compact Coordinator Nichole Case contacted Plaintiff by telephone.  Ms. Case stated that she had been directed by Defendant Mesick to order Plaintiff to immediately apply for an Interstate Compact to California, as Plaintiff had been released from Yolo County Jail.

72.     On January 31, 2017, Plaintiff forwarded an email to Ms. Case and Defendant Mesick declining to apply for transfer of her Idaho parole to California through the Interstate Compact Act, explaining in detail that Plaintiff was still under the jurisdiction of Yolo County

due to her pending California felony case; and under Interstate Compact rules, she was thus not eligible to apply for transfer of her parole via the Interstate Compact Act.  Plaintiff forwarded a copy of that email to Defendants Kubinski, Mesick, McDonald, Jones and Pennella, as well as to several agents of the Yolo County Probation Department and numerous other non-Defendant IDOC officials.

73.     On February 6, 2017, Plaintiff received communication from Ms. Case indicating that Plaintiff was to report pursuant to Interstate Compact rules to Sylvia Diaz of the Yolo County Probation Department on February 7, 2017, for an initial parole check-in, because Defendants Mesick, Jones and Kubinski had decided that Plaintiff needed to be supervised by California on her Idaho parole.

74.     Plaintiff contends that it was unnecessary for the Idaho Defendants to require Plaintiff to apply for an Interstate Compact to transfer supervision of her parole from Idaho to California because Plaintiff was already being supervised at that time by the Yolo County Probation Department under her pending Yolo County criminal case, was continuing to be in the Yolo County Ankle Monitoring Program, and was prohibited from traveling.

75.     Further, under official Interstate Compact Rules (ICAOS), Plaintiff was not eligible to apply for an Interstate Compact because Yolo County maintained continuing jurisdiction over her pursuant to her pending criminal matter.  Essentially, Plaintiff was still being detained by Yolo County pending resolution of her criminal case, and that jurisdiction would not end until resolution of the pending Yolo County Criminal matter (which did not occur until April 5, 2017).

76.     On February 6, 2017, Plaintiff contacted Sylvia Diaz of the Yolo County Probation Department and learned that, on or about February 2, 2017, the Yolo County Probation Department had received an Interstate Compact application through ICOTS to transfer Plaintiff's parole from Idaho to California.

77.     Plaintiff contends that Defendant Mesick personally submitted the February 2, 2017, Interstate Compact application through ICOTS, in violation of ICAOS Rules, and that Defendant Pennella, in his role as the Commissioner for the California ICAOS office, also violated ICAOS Rules and administrative requirements by failing to properly process the application through the California ICAOS office and by declining to participate in the application process.  Plaintiff also contends that Defendants Kubinski and Jones conspired with Defendant Mesick to submit the fraudulent Interstate Compact application.

78.     Interstate Compact rules require that parolees must personally initiate and sign all applications for transfer of their parole to another jurisdiction, that the application must be submitted to ICAOS via the ICOTS system by the supervising probation or parole office in the "sending state" (the state in which the offender was sentenced), and that the processing of the Application is handled by the respective ICAOS offices in the sending and receiving states.

79.     In this case, the lawfully mandated steps pursuant to ICAOS Rules for transfer of Plaintiff's parole supervision from Idaho to California would have been as follows:  (1) Plaintiff completes and signs an Interstate Compact application, delivers it to her Idaho Parole Officer, who then submits the application to ICOTS; (2) the Idaho ICAOS office in Boise (Defendant Mesick) processes the application and forwards it to the California ICAOS office (Defendant Pennella); and (3) the California ICAOS office processes California supervision reporting instructions to Plaintiff.

80.     Furthermore, Idaho Administrative Rules require payment of both a $100 Interstate Compact application fee and a $500 Interstate Compact application bond before an Interstate Compact application is processed for any probationer or parolee.

81.     In this case, Plaintiff neither initiated nor signed the February 2, 2017, Interstate Compact application which was submitted by Defendant Mesick through ICOTS, nor did she make the requisite $100 and $500 fee payments.

82.     On February 7, 2017, Plaintiff met with Yolo County Probation Officer Sylvia Diaz, who informed Plaintiff that the Interstate Application was still pending in her system and had not yet been approved by Yolo County.  After being advised by Plaintiff that Plaintiff had not in fact initiated, signed or consented to the Interstate Compact application, Ms. Diaz stated that she would leave the application pending in the Yolo County system until the matter was resolved.

83.     Early in the morning on February 14, 2017, Plaintiff forwarded an email to Ms. Case and Defendant Mesick confronting them about the fraudulent February 2, 2017, application for Interstate Compact transfer to California submitted into ICOTS by Defendant Mesick.  A copy of that email was forwarded to Defendants Kubinski, McDonald, Jones, and Pennella, as well as to numerous other non-Defendant IDOC officials.

84.     In the afternoon of February 14, 2017, Defendant Mesick forwarded Plaintiff an email stating that if Plaintiff did not consent to the transfer of her parole from Idaho to California by signing the fraudulent Interstate Compact application Defendant Mesick had submitted, that Defendant Mesick would ensure that a parole violation be issued against Plaintiff, and Plaintiff would be re-incarcerated.  Defendant Mesick also copied Defendant Pennella with the email.

85.     On February 14, 2017, Defendant Pennella responded by email that he was declining to be involved in the Interstate Compact application process with regard to Plaintiff's application and requested not to be copied on any further communications regarding Plaintiff's Interstate Compact application.

86.     On March 8, 2017, Plaintiff reluctantly and belatedly signed the fraudulent Interstate Compact application, fearing for her personal safety and freedom.  Thereafter, supervision of Plaintiff's parole was officially transferred from Idaho to California, specifically to the YCPD, and became subject to ICAOS Rules.

Issuance of an Unlawful Parole Violation

87.     On April 27, 2017, the YCPD placed Plaintiff on a limited form of supervision referred to as the "Telephone Reporting System," under which the only requirement of

supervision was for Plaintiff to call an 800 number on the fourth of every month and answer a few basic questions about her residence and employment.

88.     Transfer from active supervision onto the YCPD's Telephone Reporting System's limited supervision program is viewed by YCPD agents as an incentive available to probationers and parolees under their supervision for compliance with the terms of their probation/parole set by the YCPD.  In this case, Plaintiff received this incentive because she has had no history of issues or violations with the YCPD and has enjoyed a positive professional relationship with several agents working for that Department.

89.     Plaintiff successfully completed her monthly Telephone Reporting System check-in calls on May 4, 2017; June 4, 2017; July 4, 2017, August 4, 2017, September 4, 2017, and October 4, 2017, and was not due to check in again until November 4, 2017.

90.     At all times between May 4, 2017 and November 3, 2017, Plaintiff fully complied with the requirements of the YCPD's Telephone Reporting System's limited supervision program for supervised felony offenders.

91.     On October 22, Plaintiff finished preparing a civil rights suit against various Idaho state prison and parole officials, including Defendants Amanda Gentry, Cindy McDonald, Judy Mesick, Sandy Jones and Mark Alan Kubinski, among others, and emailed a courtesy copy to the Defendants and multiple members of the Idaho Attorney General's office, along with a confidential letter which offered the Defendants an opportunity to settle the matter prior to suit being filed.

92.     Later that day, Plaintiff was copied on an email that Defendant Mark Alan Kubinski had sent to the other Defendants indicating that they were not to contact Plaintiff to attempt to settle, but that they were instead to contact him if they were served with the Complaint.

93.     On October 23, 2017, Plaintiff filed a civil rights suit (in propria persona) in the U.S. District Court for the Eastern District of California, *Pringle v. Gentry, et al.* Case No. 2:17-cv-2206.

94.     As Plaintiff's Complaint in the *Pringle v. Gentry* matter indicates, the named Defendants engaged in a pattern of calculated harassment and retaliation against Plaintiff for years, arising out of her protected conduct of filing numerous grievances against Defendants and the IDOC, as well as two Petitions for Writ of Habeas Corpus, and for assisting many other offenders with filing grievances and legal documents against IDOC, all of which were warranted by IDOC officials, including the named Defendants' prolific civil rights violations and fraudulent activities.

95.     In light of Plaintiff's extensive history of being harassed by Defendants, after filing the Complaint in this matter and forwarding the courtesy copies to Defendants, Plaintiff began regularly checking her parole status on the IDOC Offender Search [status] Database that IDOC maintains for public inquiries.

96.     The IDOC Offender Search Database is updated daily and indicates for every individual who has been sentenced to prison at an IDOC facility, the offender's place of incarceration and parole eligibility date [for currently incarcerated individuals]; and for parolees, the date on which the offender was paroled and their Sentence Satisfaction Date (the date on which parole expires).

97.     Plaintiff checked her parole status on the IDOC Offender Search Database daily between October 23, 2017, and November 3, 2017.

98.     As of 4:23 a.m. on October 26, 2017, Plaintiff's parole status as reported on the IDOC Offender Search Database was "Released to [parole] Supervision on 11/1/16," with a Sentence Satisfaction Date of May 5, 2018 -- the date on which Plaintiff was entitled to full release from parole.

99.    On November 3, 2017, Plaintiff again checked the IDOC Offender Database and was shocked and dismayed to discover that as of 4:16 a.m. that morning, her offender parole status had inexplicably been amended to "Fugitive."

100.    Plaintiff is informed and believes that when the term "Fugitive" appears on the IDOC Offender Search Database, it evidences that the Idaho PC has filed a parole violation warrant against the parolee which alleges absconding.

101.    However, Plaintiff had not in fact absconded from supervision, as she had successfully completed the sole supervisory component of her parole supervision by the YCPD—the check-in calls—and was not due to call in again until November 4, 2017, the day after Plaintiff discovered the issuance of a parole violation warrant by Defendant Sandy Jones, in her role as Executive Director of the Idaho PC.

102.    Here, the timing says it all:  Plaintiff forwarded courtesy copies of the *Pringle v. Gentry* Complaint to the Idaho Defendants on October 22, 2017; the Complaint was filed on October 23, 2017; and the parole violation warrant was issued by Defendant Sandy Jones on or about November 2, 2017.  Because Plaintiff had checked in through the YCPD Telephone Reporting System on October 4, 2017, and was not due to check in again until November 4, 2017, there would have been no reason for the YCPD to believe that Plaintiff had absconded on or before November 2, 2017, the date on which the parole violation warrant alleging absconding was issued.

103.    Plaintiff contends that Idaho Defendants Jones, Mesick and Kubinski either personally contacted or conspired to contact California Defendants Brent Cardall, Anthony Pennella, and the Yolo County Probation Department immediately after the Idaho Defendants received notice of Plaintiff's lawsuit and requested that the California Defendants initiate parole violation proceedings against Plaintiff for absconding, as absconding is the only violation allegation that would allow the Idaho Defendants to return Plaintiff to prison for the remainder of her unserved prison term (three years).

104.   Plaintiff further contends that Defendants Jones, Mesick and Kubinski requested that Plaintiff's parole be violated out of retaliation; the California Defendants in conspiracy with Defendants Jones, Mesick and Kubinski acquiesced to the request; and a short time later, Defendant Sandy Jones issued a parole commission violation warrant against Plaintiff.

105.   Plaintiff's parole supervision is governed by the Rules of the Interstate Commission for Adult Offender Supervision (ICAOS), given that her parole had been transferred from Idaho to California through ICAOS as of March 8, 2017.

106.   ICAOS Rules pertaining to Interstate Compact supervision require that any report of serious violation, which would include an allegation of absconding, must be initiated by the supervising agent in the receiving state (the state to which the offender transferred) and sent through the ICAOS Commission offices in the respective states (Sacramento, California and Boise, Idaho).

107.   As applicable to Plaintiff, any violation report would have had to be first initiated by Defendant Cardall or a Probation Officer working for the YCPD and submitted through ICOTS to Defendant Pennella in the Sacramento, California ICAOS office, who was then responsible for communicating with Defendant Mesick at the Boise, Idaho ICAOS office regarding the parole violation.  Further, any arrest warrant for absconding would have had to be initially issued by Defendants Cardall or Yolo County as an agent's warrant.

108.   The foregoing procedure was not followed in this case.  There would have been no reason for a parole violation report to have been initiated by the YCPD, absent a request from Defendants Jones, Mesick and Kubinski; and no agent's arrest warrant for parole violation has ever been issued by the YCPD.  Furthermore, Plaintiff has not been served with any written or oral notice of any parole violation from the YCPD.

109.   Pursuant to ICAOS Rule 4.109-2: "If there is reason to believe that an offender has absconded, the receiving state shall attempt to locate the offender. Such activities shall include, but are not limited to: (1) conducting a field contact at the last known place of residence; (2)

contacting the last known place of employment, if applicable; and (3) contacting known family members and collateral contacts."

110.   Plaintiff has not moved from her official parole address of 2544 Allen Circle in Woodland, California; Plaintiff has had no direct contact with any officer, agent or employee at the YCPD since May 1, 2017 (other than calling the check-in number for the YCPD Telephone Reporting System); no attempt has been made to contact her by any agent or employee of the YCPD; and none of Plaintiff's family members have been contacted by the YCPD.

111.   Specifically, the YCPD failed to contact Plaintiff's sister, Mika Pringle Tolson, with whom Plaintiff resided.  Plaintiff's sister was listed on Plaintiff's Interstate Compact Application for parole transfer from Idaho to California as being the family member responsible for Plaintiff.   Furthermore, Plaintiff completed at least four in-person check-in forms at the YCPD between January and April 2017 where she listed Mika Pringle Tolson as both a family member with whom Plaintiff resided and Plaintiff's emergency contact, and included Ms. Tolson's telephone number on the forms.  Ms. Tolson's telephone number as listed on Plaintiff's contact forms on file with the YCPD has not changed to date.  Thus, YCPD's failure to contact Ms. Tolson appears to be deliberate.

112.   Defendant Cardall and one or more Doe Defendants, in conspiracy with the Idaho Defendants, violated ICOAS rules by submitting a violation report or some other form of data in support of allegations that Plaintiff had absconded supervision, without at least directing his officers to attempt to contact Plaintiff  (in person, at her last known residence, which is also her current residence; by telephone, or by email) and without attempting to contact Plaintiff's sister, Mika Pringle Tolson, with whom Plaintiff resided.

113.   Defendant Pennella and one or more Doe Defendants, in conspiracy with the Idaho Defendants, violated ICAOS rules by failing to properly process through ICOTS a parole violation report against Plaintiff which alleged absconding.

114.   On November 16, 2017, a family friend hired an attorney from Boise, Idaho, to defend Plaintiff against the Idaho Parole Commission allegations of absconding and the Commission's parole violation warrant.

115.   On November 16, 2017, the Boise Law Offices filed a Notice of Representation of Plaintiff with both the Idaho PC and the YCPD.

116.   Between November 17, and December 21, 2017, a paralegal from the Boise Law Offices contacted the Idaho PC and the YCPD and requested more information and documentation evidencing the parole violation allegations, including a copy of the required parole violation report.

117.   A representative from the Idaho PC informed the paralegal that the Commission had evidence that Plaintiff had absconded from her official parole address of 2544 Allen Circle in Woodland, California.  However, to date, the Commission has failed to provide Plaintiff's parole attorney with any documentary evidence pertaining to the alleged parole violation.

118.   The Boise Law Firm paralegal also contacted the YCPD on several occasions and requested information and evidence of the alleged violation and a copy of the violation report.  To date, no one from that Department has returned the paralegal's phone call, nor have they forwarded a copy of any violation report.

119.   Plaintiff is informed and believes that the Idaho PC's allegation of absconding will subject her to revocation of parole, including forfeiture of time served on parole, and subsequent re-incarceration for a period of up to three years.

120.   While Idaho law (including Title 20 of the Idaho Code and Section 50 of the Idaho Administrative Procedures Act (IDAPA)) does technically provide for an evidentiary hearing during which the allegation of absconding would be subjected to proof, Plaintiff maintains from

her experience and knowledge that the due process provided to parolees during those hearings is extremely limited.  Traditional Rules of Evidence do not apply; and the hearing officer is not impartial, as they are employees of the Parole Commission, which Plaintiff has sued several times.

121.   Once Plaintiff is taken into custody on the parole violation warrant, the Idaho PC's allegations would thus likely be sustained, even without evidentiary proof of a valid violation.

122.   Further, Plaintiff is fearful of being under the power and control of the IDOC once again, given their history of doling out extreme psychological torture to her and other individuals in the past in retaliation for filing grievances and legal actions.  The trauma Plaintiff suffered from the hands of members of the IDOC and the Idaho PC in the past has led to a diagnosis of PTSD severe enough to warrant her application for Social Security Disability benefits.

Interference with the Pringle v. Gentry Suit

123.   On March 28, 2018, a hearing was held on Defendants' Motion to Dismiss Plaintiff's complaint which was noticed in the *Pringle v. Gentry* matter.   Plaintiff appeared at the hearing telephonically.

124.   Instead of arranging for a telephonic appearance (which would have been customary), Defendants' counsel in that matter, Elisa Sue Magnuson, flew from Idaho to California and personally appeared at the hearing in Sacramento, California.

125.   Plaintiff contends that Defendants Kubinski, Mesick and Jones conspired with Defendant Magnuson to arrange for Plaintiff to be detained before the hearing by a deputy Marshal working out of the U.S. Marshal's office located in the same building as the U.S. District Court for the Eastern District of California, where the hearing was scheduled to be held.

126.   Plaintiff further contends that their plan was to effectuate an arrest of Plaintiff on the parole violation warrant issued by the Idaho PC, and extradite her back to Idaho, in an effort to prevent Plaintiff from testifying at the hearing and pursuing her litigation against the Idaho defendants.

127.   Plaintiff also has received information from confidential sources that between February and April 2017, Defendant Magnuson engaged in several ex parte communications with Magistrate Judge Allison Claire (the assigned magistrate on the *Pringle v. Gentry* matter) regarding Plaintiff and Plaintiff's claims, including just prior to commencement of the hearing on Defendants' Motion to Dismiss on March 28, 2018, with a goal of preventing Plaintiff from testifying at the hearing, disposing of the case, or transferring the matter to Idaho, where Plaintiff would have no effective forum.

## FIRST CAUSE OF ACTION
### DEPRIVATION OF CONSTITUTIONAL RIGHTS AND PRIVILEGES
#### (42 U.S.C. Section 1983)
##### 5th and 14th Amendment-Procedural and Substantive Due Process Violations
##### [Against All Defendants]

128.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if they were fully set forth herein.

129.   The individual Defendants named herein personally participated, or conspired with others who personally participated, in deliberate actions designed to deprive Plaintiff of her constitutional right to procedural and substantive due process rights, as protected by the Fifth and Fourteenth Amendments to the United States Constitution.

130.   At all times herein referenced, Brent Cardall and Does 1-50 were employees of the County of Yolo and Yolo County Probation Department and/or other governmental entities to be shown according to proof, during which time they were acting within the scope of their agency and employment.  The County and its agency the Yolo County Probation Department are liable for said acts of their employees pursuant to California Government Code §815.2.

131.    These actions included violating Plaintiff's rights under the Interstate Agreement on Detainers and the Rules of the Interstate Commission for Adult Offender Supervision, as well as for issuing an unlawful Transport Order, submitting a fraudulent Interstate Compact Application, and issuing an unlawful parole violation against Plaintiff without either substantive or procedural due process.

132.    The actions undertaken by Defendants had no genuine penological purpose, nor were they designed to achieve any legitimate governmental goal or interest.

133.    The actions of Defendants were willful, wanton, oppressive, reckless, cruel, oppressive, and purposefully done with callous and deliberate indifference to Plaintiff's federally protected rights and other laws.  These acts were perpetrated while Defendants were acting in their official capacities and under color of state law.

134.    Defendants, and each of them, engaged in, knew about or should have known about the acts and/or omissions that caused the constitutional deprivations alleged herein, but failed to prevent them and/or ratified/approved them and/or acquiesced to them.

135.    Defendants, and each of them, committed the aforementioned acts and omissions in bad faith and with knowledge that their conduct violated well-established law.

136.    As a direct and proximate result of said acts and/or omissions by Defendants, Plaintiff suffered, continues to suffer, and is likely to suffer in the future, nervousness, anxiety, post-traumatic stress syndrome (PTSD), depression, extreme and severe mental anguish, mental and physical pain and injury, fright, shock, humiliation, indignity, embarrassment and apprehension.  For such injuries, she has incurred and will continue to incur significant damages.

137.    The aforementioned acts and omissions of Defendants were committed by each of them knowingly, willfully and maliciously.  By reason thereof, Plaintiff is entitled to punitive and exemplary damages from Defendants according to proof.

**SECOND CAUSE OF ACTION**
**DEPRIVATION OF CONSTITUTIONAL RIGHTS AND PRIVILEGES**
**(42 U.S.C. Section 1983)**
**14th Amendment Equal Protection**
**[Against All Defendants]**

138.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if they were fully set forth herein.

139.    The individual Defendants named herein personally participated, or conspired with others who personally participated, in deliberate actions designed to deprive Plaintiff of her constitutional right to equal protection under the law, as provided by the Fourteenth Amendment to the United States Constitution.

140.    At all times herein referenced, Brent Cardall and Does 1-50 were employees of the County of Yolo and Yolo County Probation Department and/or other governmental entities to be shown according to proof, during which time they were acting within the scope of their agency and employment.  The County and its agency the Yolo County Probation Department are liable for said acts of their employees pursuant to California Government Code §815.2.

141.    The actions of Defendants were willful, wanton, oppressive, reckless, cruel, oppressive, and purposefully done with callous and deliberate indifference to Plaintiff's federally protected rights and other laws.  These acts were perpetrated while Defendants were acting in their official capacities and under color of state law.

142.    These actions included failing to provide Plaintiff equal protection of the law with respect to the Interstate Agreement on Detainers and the Rules of the Interstate Commission for Adult Offender Supervision.

143.    Defendants, and each of them, engaged in, knew about or should have known about the acts and/or omissions that caused the constitutional deprivations alleged herein, but failed to prevent them and/or ratified/approved them and/or acquiesced to them.

144.    Defendants, and each of them, committed the aforementioned acts and omissions in bad faith and with knowledge that their conduct violated well-established law.

145.    The actions undertaken by Defendants had no genuine penological purpose, nor were they designed to achieve any legitimate governmental goal or interest.

146.    As a direct and proximate result of said acts and/or omissions by Defendants, Plaintiff suffered, continues to suffer, and is likely to suffer in the future, nervousness, anxiety, post-traumatic stress syndrome (PTSD), depression, extreme and severe mental anguish, mental and physical pain and injury, fright, shock, humiliation, indignity, embarrassment and apprehension.  For such injuries, she has incurred and will continue to incur significant damages.

147.    The aforementioned acts and omissions of Defendants were committed by each of them knowingly, willfully and maliciously.  By reason thereof, Plaintiff is entitled to punitive and exemplary damages from Defendants according to proof.

**THIRD CAUSE OF ACTION**
**DEPRIVATION OF CONSTITUTIONAL RIGHTS AND PRIVILEGES**
**(42 U.S.C. Section 1983)**
**First Amendment Retaliation and Eighth Amendment Calculated Harassment**
**[Against All Defendants]**

148.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if they were fully set forth herein.

149.    The individual Defendants named herein personally participated, or conspired with other who personally participated, in deliberate actions designed to deprive Plaintiff of her constitutional right to be protected against retaliation and calculated harassment for the exercise of her First Amendment right to petition for redress of wrongs.  Said violations have had a chilling effect on Plaintiff's free speech rights, in violation of the First Amendment.

150.    At all times herein referenced, Brent Cardall and Does 1-50 were employees of the County of Yolo and Yolo County Probation Department and/or other governmental entities to be shown according to proof, during which time they were acting within the scope of their agency and employment.  The County and its agency the Yolo County Probation Department are liable for said acts of their employees pursuant to California Government Code §815.2.

151.    These actions included deliberately refusing to follow the provisions of the Interstate Agreement on Detainers and the Rules of the Interstate Commission for Adult Offender Supervision with respect to Plaintiff, issuing an unlawful Transport Order, submitting a fraudulent Interstate Compact Application, and issuing an unlawful parole violation arrest warrant against Plaintiff, in retaliation for Plaintiff's exercise of her First Amendment rights.

152.    The actions of Defendants were willful, wanton, oppressive, reckless, cruel, oppressive, and purposefully done with callous and deliberate indifference to Plaintiff's federally protected rights and other laws.  These acts were perpetrated while Defendants were acting in their official capacities and under color of state law.

153.    Defendants, and each of them, engaged in, knew about or should have known about the acts and/or omissions that caused the constitutional deprivations alleged herein, but failed to prevent them and/or ratified/approved them and/or acquiesced to them.

154.    Defendants, and each of them, committed the aforementioned acts and omissions in bad faith and with knowledge that their conduct violated well-established law.

155.    The actions undertaken by Defendants had no genuine penological purpose, nor were they designed to achieve any legitimate governmental goal or interest.

156.    As a direct and proximate result of said acts and/or omissions by Defendants, Plaintiff suffered, continues to suffer, and is likely to suffer in the future, nervousness, anxiety, post-traumatic stress syndrome (PTSD), depression, extreme and severe mental anguish, mental and physical pain and injury, fright, shock, humiliation, indignity, embarrassment and apprehension.  For such injuries, she has incurred and will continue to incur significant damages.

157.    Defendants' acts constituted a pattern and practice of calculated harassment against Plaintiff over a period of several years, in violation of the Eighth Amendment. Defendants' conduct also constitutes acts intended with malice and oppression as to Plaintiff such that Plaintiff is entitled to punitive damages pursuant to California Civil Code §3294(a).

**FOURTH CAUSE OF ACTION**
**Violation of 14th Amendment-Equal Protection of the Law**
**Violation of California Penal Code §136.1(a)**
**[Against all Defendants]**

158.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if they were fully set forth herein.

159.    Plaintiff alleges that at all times mentioned herein, the conduct of Defendants constituted interference or attempted interference with the exercise of enjoyment by Plaintiff of rights secured by the Constitution of laws of the United States, or secured by the Constitution or laws of the state of California, including the right to petition the government for redress of wrongs, under the First Amendment, and the right to testify as a witness on her own behalf, with regard to the matter entitled *Pringle v. Gentry*.

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS  -  32

160.   California Penal Code §136.1(a) provides in relevant part:

"Any person who does any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:

(2) **Knowingly and maliciously attempts to prevent** or dissuade **any witness** or victim **from attending or giving testimony at any trial, proceeding, or inquiry authorized by law.**

(c) Every person doing any of the acts described in subdivision (a) or (b) knowingly and maliciously under any one or more of the following circumstances, is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years under any of the following circumstances:

 (2) **Where the act is in furtherance of a conspiracy."**

161.   The individually-named Defendants personally participated in violating Plaintiff's right to equal protection under the law by violating the provisions of California Penal Code §136.1(a).

162.   As a direct cause of the individually-named Defendants' conduct, Plaintiff's rights were violated, causing injuries, harm and damages in an amount to be proven at trial.

163.   Plaintiff contends that the individually-named Defendants' conduct was a substantial factor in causing harm to Plaintiff.

164.   Pursuant to California Government Code §815.2, the municipal Defendants are liable for the acts, omissions and conduct of their employees, including Brent Cardall and Does 1-50, whose conduct was a substantial factor in causing the damages and injuries to Plaintiff.

165.   As a direct cause of Defendants' conduct, Plaintiff's rights pursuant to California Penal Code §136.1(a) were violated, causing injuries and damages in an amount to be proven at the time of trial.

**FIFTH CAUSE OF ACTION**
**42 U.S.C. §1985**
**Civil Rights Conspiracy Claim**
**[Against all Defendants]**

166.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if they were fully set forth herein.

167.    Defendants, including Does 1-50, inclusive, agreed amongst themselves to act in concert to deprive Plaintiff of her clearly established constitutional rights as protected by the First, Fifth, Eighth and Fourteenth Amendments.

168.    In furtherance of the conspiracy, Defendants engaged in and facilitated numerous overt acts in furtherance of the conspiracy, including acting in concert to contrive, create, produce and/or fabricate false disciplinary actions and a false parole violation against Plaintiff.

169.    As a direct and proximate result of Defendants' overt acts and/or omissions, Plaintiff was deprived of her constitutional rights and subjected to injuries and damages as set forth herein, and in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
**Violation of Civil Rights (MONELL CLAIMS)**
**[Against Defendants Yolo County and Yolo County Probation Department]**

170.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if they were fully set forth herein.

171.    Defendants knowingly, with gross negligence, and in deliberate indifference to the Constitutional rights of citizens, maintain and permit official policies and customs permitting the occurrence of the types of wrongs set forth hereinabove and hereafter, including violation of Plaintiff's rights under the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

172.   Plaintiff has a constitutional interest to be free from improper policies and customs from law enforcement and criminal justice agencies such as the Defendants.  These policies and customs include, but are not limited to, the deliberately indifferent training of its law enforcement officers, resulting in improper violations of professional conduct by way of color of authority.

173.   These policies and customs include failure to conduct adequate investigations into probation and parole violation, as herein alleged.

174.   Plaintiff is informed and believes, and thereon alleges, that the customs and policies of Yolo County and the Yolo County Probation Department substantially contributed to the violations of Plaintiff's rights.  Based upon the principles set forth in *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658, Defendants are liable for all the injuries sustained by Plaintiff as set forth above.

175.   Plaintiff is informed and believes, and upon that basis contends, that Defendants maintain a pervasive policy of subjugated discriminatory and abusive practices against citizens.

176.   In acting as alleged herein, Defendants caused Plaintiff to be injured and caused Plaintiff other damages, all in an amount to be determined at the time of trial.

177.   Due to the conduct of Defendants, Plaintiff has been required to incur attorneys' fees and will continue to incur attorneys' fees, all to Plaintiff's damage, in a sum to be proven at trial and recoverable pursuant to 42 U.S.C. §1988.

**SEVENTH CAUSE OF ACTION**
**Negligent Hiring and Supervision**
**[Against Defendants Brent Cardall, Yolo County and**
**Yolo County Probation Department]**

178.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if they were fully set forth herein.

179.    The employees and/or agents of Defendants have a special relationship with Plaintiff, which imposes upon them an affirmative duty to take reasonable steps to protect her from foreseeable risks at hand.

180.    As Probation/Parole Officers, Defendants were in a position of authority, trust, influence and persuasion over Plaintiff.  Defendants Brent Cardall and Does 1-50 were employees and/or agents of Defendant Yolo County and the Yolo County Probation Department, responsible for maintaining the special relationship with the public, including Plaintiff.  Defendants' abuse of Plaintiff was an abuse of authority.

181.    Defendants failed to use reasonable care in hiring and supervising their employees and/or agents who had actual and constructive knowledge and/or notice that the manner and means of hiring created a dangerous environment for the public, including Plaintiff, and of Defendants' agents and employees' acts and propensity to commit such acts.

182.    Nonetheless, Defendants' employees and/or agents took no remedial steps to protect the public, including Plaintiff.

183.    The employees and/or agents of Defendants knew or should have known that employment practices which failed to screen or investigate employees and/or agents with propensity to commit abuse would create a dangerous environment for the public, including Plaintiff.

184.    The employees and/or agents of Defendants knew or should have known about Defendants' abuse in the public, including Plaintiff.  Despite such knowledge, Defendants' employees and/or agents ignored and failed to investigate or remedy Defendant YCPD's agents' conduct in any way, thereby placing the community at risk of harm.

185.    Despite the knowledge of Defendants' employees and/or agents abuse, they nevertheless negligently hired, retained, and supervised their personnel.  Defendants' employees and/or agents are liable under Government Code §820, subdivision (a) for their acts or omissions that caused Plaintiff harm.  In addition, Defendants are vicariously liable under Government Code §815.2, subdivision (a) for the acts and/or omissions of their employees and/or agents who failed to take appropriate steps to train their personnel to report or prevent Defendants' abuse.

186.    The employees and/or agents of Defendants owed Plaintiff a duty to protect her from unlawful abuse. Defendants' employees and/or agents knew or should have known that failure to properly supervise their personnel and investigate their conduct would subject persons, such as Plaintiff, to an unreasonable risk of being unlawfully abused.

187.    As a direct and proximate result of negligent hiring and/or supervision of Defendants' employees and/or agents, Plaintiff suffered and continues to suffer damages, including, but not limited to, distress and other damages to be proven at trial.

### EIGHTH CAUSE OF ACTION
**Negligent Training**
**[Against Defendants Brent Cardall, Yolo County and**
**Yolo County Probation Department]**

188.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if they were fully set forth herein.

189.    As Yolo County Probation Department officers and supervisors, Defendants were in a position of authority, trust, influence and persuasion over Plaintiff, as well as other community members.

190.    Defendant Brent Cardall and Does 1-50 were agents and employees of Defendants Yolo County and Yolo County Probation Department, responsible for maintaining the special relationship with the community.

191.    The abuse of Plaintiff was an abuse of authority, position of authority, trust, influence and persuasion as agents and employees of Defendants.

192.    The employees and/or agents of Defendants owed a duty of care in training its personnel.

193.    The employees and/or agents of Defendants neither had in place nor implemented an adequate system or procedure for investigating, training and supervising employees and/or agents to prevent or remedy abuse of its citizens, especially given the special position of authority, trust, influence and persuasion that Defendants have over citizens such as Plaintiff.  Defendants' employees and/or agents thereby failed to use reasonable care to prevent Defendants' conduct.

194.    The employees and/or agents of Defendants breached their duty of care in training its employees and agents, thereby subjecting Plaintiff to an unreasonable risk of harm of abuse by Defendants' employees.

195.    Defendants' employees and/or agents are liable under Government Code §820, subdivision (a) for their acts or omissions that caused Plaintiff harm. In addition, Defendants are vicariously liable under Government Code §815.2, subdivision (a) for the acts and/or omissions of their employees and/or agents who failed to take appropriate steps to train their personnel.

196.    As a direct and proximate result of negligent training of Defendants' employees and/or agents, Plaintiff suffered and continues to suffer damages, including, but not limited to, distress and other damages to be proven at trial.

### NINTH CAUSE OF ACTION
### DECLARATORY RELIEF
### [Against All Defendants]

197.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if they were fully set forth herein.

198.    An actual controversy exists between Plaintiff and Defendants regarding the constitutionality of Defendants' actions taken pursuant to the Interstate Agreement on Detainers, the Interstate Compact Act, and the parole violation lodged against Plaintiff as stated herein.

199.    Plaintiff is entitled to a declaration of rights with regard to the legality of the Defendants' actions described herein.

### RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief:

1.    For compensatory, general and special monetary damages against each Defendant, jointly and severally, in an amount to be shown according to proof, but in a sum greater than $50,000;

2.    For punitive and exemplary damages against each Defendant in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct, as allowed by law;

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS  -  39

3.    For injunctive relief enjoining Defendants from continuing to engage in acts and/or omissions which violate Plaintiff's constitutional rights;

4.    For declaratory relief that Defendants' acts, including failure to process Plaintiff's requests under the IAD, the issuance of an unlawful Transport Order, the submission of a fraudulent Interstate Compact Application, and the lodging of a parole violation against Plaintiff on or about November 1, 2017, violated the First, Fifth, Eighth and Fourteenth amendments to the U.S. Constitution, California Penal Code 136.1(a), the Interstate Agreement on Detainers, and the Rules of the Interstate Commission for Adult Offender Supervision;

5.    For costs and reasonable attorneys' fees accrued pursuant to 42 U.S.C. §1988 and as otherwise authorized by statute or law;

6.    For an award of interest to Plaintiff to commence from the date of first constitutional violation; and

7.    For such other and further relief as the Court may deem proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on each of her causes of action.

Respectfully submitted,                          Dated:  August 3, 2018


By: _____*/S/ Hans W. Herb*_____
        Hans W. Herb