```
 1
 2
 3
 4
 5
 6
 7
 8                    UNITED STATES DISTRICT COURT
 9                   EASTERN DISTRICT OF CALIFORNIA
10                           ----oo0oo----
11
12  PAMELA DENISE PRINGLE,              No. 2:18-cv-2035 WBS KJN
13              Plaintiff,
14       v.                             ORDER RE: MOTION TO DISMISS
                                        AND IMPROPER VENUE
15  BRENT CARDALL, COUNTY OF YOLO,
    YOLO COUNTY PROBATION
16  DEPARTMENT, ANTHONY PENNELLA,
    SANDY JONES, AMANDA GENTRY, NOEL
17  BARLOW-HUST, JUDY MESICK, CINDY
    McDONALD, MARK ALAN KUBINSKI,
18  ELISA SUE MAGNUSON, JOHN DOES 1-
    20, and JANE DOES 1-20,
19  inclusive,
20              Defendants.
21
22                           ----oo0oo----
23           Plaintiff Pamela Pringle filed this action under 42
24  U.S.C. § 1983, claiming that defendants violated her civil rights
25  during and after her incarceration in Idaho Department of
26  Correction ("IDOC") facilities.  Defendants Sandy Jones, Amanda
27  Gentry, Noel Barlow-Hust, Judy Mesick, Cindy McDonald, Mark
28
                                   1
```

Kubinski, and Elisa Magnuson (collectively "the Idaho defendants") move to dismiss plaintiff's complaint. (Docket No. 53.)

I. Background

    A. Factual Background

On May 25, 2016, plaintiff, then a prisoner at Idaho Department of Correction Pocatello Women's Correctional Center, was informed that California had lodged a detainer against her for an untried pending felony. (First Am. Compl. ("FAC") ¶ 26 (Docket No. 7).) The Interstate Agreement on Detainers Act, 18 U.S.C. § APP. 2 § 1 et seq., provides a mechanism through which prisoners incarcerated in one state may request a final disposition on indictments lodged against them in a second state. (Id. ¶ 24.) Plaintiff alleges that defendants Amanda Gentry, the Warden at Pocatello Women's Correctional Center, Cindy McDonald, the Interstate Coordinator for the Idaho Department of Correction Central Office, and Mark Alan Kubinski, a Deputy Attorney General assigned to the Idaho Department of Correction, repeatedly declined to process her request for a final disposition of her California indictment. (Id. ¶¶ 28, 30 & 45-48.) Plaintiff also alleges that following her transfer to South Boise Women's Correction Center on July 14, 2016, defendant Noel Barlow-Hust, the Warden at that facility, refused to process the same request for a final disposition. (Id. ¶¶ 35-37.) She contends that, at the direction of defendants Gentry and Kubinski, she was threatened with punitive measures if she continued to seek assistance in submitting a request for a final disposition on her California detainer. (Id. ¶¶ 41-43.)

On November 1, 2016, immediately after she was released from prison in Idaho and onto parole, plaintiff was taken into custody by an IDOC officer and transported to Bannock County Jail to await transportation to California. (Id. ¶¶ 59-66.) These actions were allegedly taken pursuant to an illegal transport order drafted by defendants McDonald and Kubinski. (Id. ¶ 65.) Plaintiff claims that during the more than 48 hours she spent at Bannock County Jail, as well as during the 13-hour trip from Idaho to Yolo County, California, she endured substandard conditions -- e.g., her jail cell was brightly lit and loud 24 hours a day and she was denied water during the 13-hour trip from Idaho to California. (Id. ¶¶ 66-69.)

On December 30, 2016, plaintiff was released from the Yolo County detention facility, but was ordered to wear an electronic ankle monitor, remain in Yolo County, and to submit to supervision by the Yolo County Probation Department until the resolution of the California felony criminal case against her. (Id. ¶ 70.) Around January 26, 2017, an IDOC employee contacted her in California and directed her to apply for transfer of supervision of her Idaho parole to California under the Interstate Compact for Adult Offender Supervision ("ICAOS"). (Id. ¶ 71.) Responding in writing, plaintiff declined to do so and asserted that she was still under the jurisdiction of the Yolo County detainer and therefore ineligible to apply for transfer of supervision under the ICAOS. (Id. ¶ 72.)

On February 6, 2017, an IDOC employee allegedly ordered plaintiff to report to Sylvia Diaz of the Yolo County Probation Department for an Idaho parole check-in. (Id. ¶ 73.) Plaintiff

3

was told that defendant Kubinski, along with defendant Mesick, the Deputy Interstate Compact Commissioner for Idaho (id. ¶ 12), and defendant Jones, the Executive Director for the Idaho Commission of Pardons and Parole (id. ¶ 11), had decided that California would supervise plaintiff's Idaho parole. (Id. ¶ 73.) Plaintiff alleges that she contacted Sylvia Diaz on February 6, 2017 and learned that on February 2, 2017 the Yolo County Probation Department had received an interstate compact application to transfer plaintiff's parole from Idaho to California. (Id. ¶ 73.) Plaintiff maintains that she was not eligible to apply for transfer of supervision under ICAOS. (Id. ¶ 75.) She claims that she neither initiated nor signed this application for an interstate compact (id. ¶ 81), and that it was defendant Mesick who fraudulently submitted plaintiff's interstate compact application. (Id. ¶ 77.) According to plaintiff, defendant Mesick forwarded plaintiff an email on February 14, 2017, which stated that if plaintiff did not consent to the transfer of her parole from Idaho to California, plaintiff would receive a parole violation and be re-incarcerated. (Id. ¶ 84.) On March 8, 2017, plaintiff "reluctantly and belatedly" signed the "fraudulent Interstate Compact Application." (Id. ¶ 86.)

In October 2017, plaintiff brought Pringle v. Gentry, 2:17-cv-2206 ("Pringle I"), pro se against a variety of Idaho correctional and parole officials, many of them also defendants in the instant case. (Id. ¶¶ 91 & 93.) That case was assigned to Judge Troy L. Nunley. Plaintiff alleges that in retaliation for that suit, defendants Jones, Mesick, and Kubinski conspired

4

with defendants Cardall and Pennella, as well as with the Yolo County Probation Department, to issue a groundless parole violation against plaintiff. (Id. ¶¶ 102-04.) Plaintiff states that at all times between May 4, 2017, and November 3, 2017, she was in compliance with the terms of her Idaho parole. (Id. ¶¶ 89-90.) Plaintiff alleges that at some point between October 26, 2017, and November 3, 2017, her status in the IDOC Offender Database was changed from "Released to [parole] supervision" to "Fugitive." (Id. ¶¶ 98-99.) Plaintiff contends that this change occurred because of defendants' allegedly conspiratorial and baseless report that plaintiff had absconded from parole. (Id. ¶¶ 100-104.)

On March 28, 2018, a hearing was held before Magistrate Judge Allison Claire in Pringle I. (Id. ¶ 123.) Plaintiff appeared telephonically. (Id.) She alleges, however, that defendants Kubinski, Mesick, and Jones conspired with defendant Magnuson, a Deputy Attorney General for the state of Idaho (id. ¶ 15), to arrange for plaintiff to be detained by a United States Marshal working in the same building where the hearing was held. (Id. ¶ 125.) Plaintiff further alleges that defendant Elisa Magnuson, an Idaho Deputy Attorney General, engaged in ex parte communications with Judge Claire. (Id. ¶ 127.) Eventually, after the parties litigated various jurisdictional and venue-related issues, Judge Nunley ordered the case transferred to the District of Idaho under 28 U.S.C. § 1404(a). Later that same day, plaintiff filed a notice of voluntary dismissal without prejudice of that action under Federal Rule of Civil Procedure Rule 41(a)(1)(A)(i) and the case was closed.

5

B.  Procedural Background

Plaintiff filed the complaint in this action, 2:18-cv-02035 WBS KJN, ("Pringle II") one week before Judge Nunley's ruling ordering Pringle I's transfer to Idaho. Citing Pringle I's transfer to Idaho and the fact that the court had not reached Pringle I's merits, Judge Nunley declined to relate Pringle I and Pringle II. (Minute Order (Docket No. 6).)

Plaintiff represented to the court that all of the defendants in this case were properly served pursuant to Rule 4(e)(1) of the Federal Rules of Civil Procedure. (Docket Nos. 8-19.) The Idaho defendants failed to respond or otherwise defend themselves in the time allotted under Rule 12. Plaintiff then requested and received an entry of default against the Idaho defendants. (Docket Nos. 20 & 22.) On January 2, 2019, the Idaho defendants moved to set aside the default and quash the summons. (Docket No. 30.) That same day plaintiff moved for default judgment against the Idaho defendants. (Docket No. 31.) The court eventually granted the Idaho defendants' motion to set aside the default on the condition that they pay plaintiff $5,040 in attorney's fees associated with the preparation of her motion for entry of default judgment. (Docket Nos. 46, 56 & 65.)

Around the same time, defendants Brent Cardall and the County of Yolo moved to dismiss two of plaintiff's claims against them, sever and transfer all claims against the Idaho defendants to the District of Idaho, and stay proceedings. (Docket No. 21.) The court dismissed plaintiff's claims against defendants Cardall and the County of Yolo for negligent hiring and supervision, and negligent training. (Docket No. 37.) The court denied

6

defendants' requests to sever, transfer, and stay this case.

The Idaho defendants now move to dismiss plaintiff's complaint for lack of personal jurisdiction,[1] for failure to state a claim, and for forum non conveniens. Plaintiff asserts three separate causes of action under 42 U.S.C. § 1983, a claim under California Penal Code § 136.1(a), and a civil rights conspiracy claim under 42 U.S.C. § 1985 against these defendants.

II. Discussion

   A. Motion to Dismiss for Lack of Personal Jurisdiction

Plaintiff has the burden of establishing that the court has personal jurisdiction over the Idaho defendants. In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 741 (9th Cir. 2013), aff'd sub nom., Oneok, Inc. v. Learjet, Inc., 135 S. Ct. 1591 (2015). Where the court does not hold an evidentiary hearing and the motion is based on the written

---

[1] In a prior order, the court stated that "[a]ny impropriety of venue that may have existed was cured when the Idaho defendants waived venue by failing to respond to the complaint." (Docket No. 37 at 10 n.2 (citing Hoffman v. Blaski, 363 U.S. 335, 343 (1960)). While Hoffman analogizes the waiver of venue to the waiver of personal jurisdiction, the two defenses are waived in different ways. Defendants remain free to challenge personal jurisdiction after an entry of default. See Am. Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1107 (9th Cir. 2000). The only requirement is that the defense of lack personal jurisdiction be included in the first responsive pleading. See id. Here, defendants complied with this requirement because they raised this challenge in their motion to set aside default. (See Docket No. 30.) "This distinction between defects in venue and personal jurisdiction is due to their respective effect on the court's power: A judgment is void when a court enters it lacking subject matter jurisdiction or jurisdiction over the parties. Defects in venue do not affect the court's power and a valid default judgment may be entered by a court notwithstanding the defect." Williams v. Life Sav. & Loan, 802 F.2d 1200, 1202-03 (10th Cir. 1986).

materials, plaintiff need only establish a prima facie showing of personal jurisdiction.[2] Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). In such a case, "[u]ncontroverted allegations in the complaint must be taken as true" and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." Id.

If there is no applicable federal statute governing personal jurisdiction, the court applies the law of the state in which it sits. Love v. Associated Newspapers, Ltd., 611 F.3d 601, 608-09 (9th Cir. 2010). "California's long-arm jurisdiction statute is coextensive with federal due process requirements." Id. Due process requires that for nonresident defendants to be subject to the court's jurisdiction, defendants "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: general jurisdiction[3] or

---

[2] Where the pleadings and other submitted written materials "raise issues of credibility or disputed questions of fact with regard to jurisdiction, the district court has the discretion to take evidence at a preliminary hearing in order to resolve the contested issues." Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). If there is an evidentiary hearing on the issue of personal jurisdiction "plaintiff must establish the jurisdictional facts by a preponderance of the evidence, just as he would have to do at trial." Id.

[3] At the hearing on this motion, plaintiff's counsel conceded that he was not relying on general jurisdiction. Counsel made this concession for good reason. For individuals like the Idaho defendants, "the paradigm forum for the exercise

8

specific jurisdiction.  Ranza v. Nike, Inc., 793 F.3d 1059, 1068 (9th Cir. 2015) (citing Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014)).

1. Specific Jurisdiction

"[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citations and quotations omitted). The specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780 (1984) (citations and quotations omitted). "[T]he relationship must arise out of contacts that the 'defendant himself' creates with the forum State." Walden v. Fiore, 571 U.S. 277, 284 (2014) (emphasis in original). The court must thus "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Id. at 285.

The Ninth Circuit uses a three-prong test to analyze claims of specific personal jurisdiction. This analysis requires first that the non-resident defendant "purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully

---

of general jurisdiction" would be their domiciles. Daimler, 571 U.S. at 137. All moving defendants are residents of Idaho. (See FAC ¶¶ 8-15.) None of these defendants have consented to the exercise of personal jurisdiction in California, and there is no evidence that their contacts with California have been so constant and pervasive as to establish constructive domicile in this state.

9

avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." Schwarzenegger, 374 F.3d at 802 (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)). While courts sometimes use the term "purposeful availment" to include both purposeful availment and purposeful direction, they are two distinct concepts. Id. "A purposeful availment analysis is most often used in suits sounding in contract . . . [while] [a] purposeful direction analysis . . . is most often used in suits sounding in tort." Id. (citations omitted). Because civil rights actions sound in tort, courts typically use a purposeful direction analysis in such cases. See Ziegler v. Indian River Cty., 64 F.3d 470, 474 (9th Cir. 1995). Purposeful direction is evaluated under the "effects test" derived from Calder v. Jones, 465 U.S. 783 (1984). Under the "effects test" the defendant must have: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1069 (9th Cir. 2017).

The second factor of the Ninth Circuit's three-part test for evaluating specific personal jurisdiction requires that the claim "be one which arises out of or relates to the defendant's forum-related activities." Schwarzenegger, 374 F.3d at 802. The plaintiff has the burden of establishing both of these first two prongs. Id. (citing Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990)). If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to present a compelling case that the third prong, which requires that the

exercise of jurisdiction comports with fair play and substantial justice, is not met. Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985)). Here, plaintiff's allegations in support of jurisdiction suffer from four major defects.

First, plaintiff cannot rely on the general agreements between the states of Idaho and California that govern the treatment of inmates and parolees to satisfy the requirements for specific jurisdiction. Because the Idaho defendants are being sued in their individual capacities (see FAC ¶¶ 8-15), "[e]ach defendant's contacts with the forum State must be assessed individually." See Calder, 465 U.S. at 790. There is no authority under which this court can impute all contacts of the state of Idaho and its agents to the Idaho defendants simply because they are employees of the state. Cf. Ranza, 793 F.3d at 1072 (stating that there is "no binding authority applying the alter ego test in reverse"). Indeed, the Supreme Court and Ninth Circuit have rejected using such an expansive view of agency relationships when determining whether jurisdiction exists. See Daimler, 571 U.S. at 134-35; Williams v. Yamaha Motor Co., 851 F.3d 1015, 1024 (9th Cir. 2017) (stating that Daimler's rationale also governs in the specific jurisdiction context).

Second, many of plaintiff's allegations in support of jurisdiction concern conduct that occurred only in Idaho. For instance, defendants Gentry, Barlow-Hust, McDonald, and Kubinski refused to process plaintiff's request for relief related to her California detainer while she was in custody in Idaho. (See FAC ¶¶ 23-58.) Similarly, defendants McDonald, Jones, Mesick, and Kubinski executed the allegedly unlawful transport order and

issued the false parole violation in Idaho, pursuant to their responsibilities as Idaho officials, and related to plaintiff's Idaho conviction. (See id. ¶¶ 59-65 & 87-104.) Plaintiff cannot rely on the mere fact that these actions had an effect on plaintiff in California. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Walden, 571 U.S. at 290. Because the above-mentioned conduct had no relation to California, the court cannot rely on it to exercise specific jurisdiction over the Idaho defendants.

Third, the alleged acts that do touch on California were contacts with persons in California and not meaningful contacts with the state itself. Plaintiff alleges that defendant McDonald lied to Yolo County Assistant District Attorney Larry Eichele and told him that plaintiff never had a detainer while confined by the Idaho Department of Corrections. (See FAC ¶¶ 51-57.) Plaintiff does not argue, however, that McDonald intended to create a relationship with California by making this allegedly false statement to Eichele. Instead, plaintiff claims that the harm from the statement was both directed to her and felt by her in California, as she resided here at the time. (See Decl. of Pamela Pringle ("Pringle Decl.") ¶ 90 (Docket No. 31-4).) However, plaintiff's contacts with the Idaho defendants and this forum cannot be the basis for jurisdiction in California. See Picot v. Weston, 780 F.3d 1206, 1213 (9th Cir. 2015) (citation omitted) (stating that plaintiff's contacts cannot drive the jurisdictional inquiry).

This same problem plagues plaintiff's allegation that

defendants Mesick, Kubinski, and Jones conspired to and submitted a fraudulent application to transfer plaintiff's parole from Idaho to California. (See FAC ¶¶ 75-79.) The allegation concerns these defendants' relationship with plaintiff as a former Idaho inmate. These defendants allegedly submitted this fraudulent transfer application simply because plaintiff had been incarcerated in California after leaving Idaho. (See id. ¶ 71.) Actions that are "only implicated by the happenstance of plaintiff['s] residence" cannot serve as the basis for jurisdiction. See Morrill v. Scott Fin. Corp., 873 F.3d 1136, 1146 (9th Cir. 2017). Indeed, if plaintiff had been incarcerated in a different state, her own allegations indicate that she would have likely experienced the same allegedly tortious conduct -- an observation that weighs against the exercise of jurisdiction. See id. (citation omitted). These acts are therefore too attenuated to California to make the exercise of jurisdiction in this state proper. See Burger King, 471 U.S. at 476.

Fourth, plaintiff's own allegations indicate that the remainder of the allegedly unlawful acts never even occurred, let alone caused harm to plaintiff in California. Plaintiff alleges that some defendants arranged for plaintiff to be detained by a deputy United States Marshal before a hearing in Pringle I. She concedes, however, that she was not arrested at that hearing because she chose not to attend in person. (See Pringle Decl. ¶ 127.) Since plaintiff was not harmed by this alleged conspiracy, this allegation fails to support the exercise of jurisdiction. See Morrill, 873 F.3d at 1144 ("Harm suffered in the forum state is a necessary element in establishing purposeful direction.").

13

Plaintiff also alleges that defendant Magnuson had an improper ex parte communication with the magistrate judge in Pringle I.[4] Even assuming that this dubious allegation is true, plaintiff does not allege that any ex parte communications caused Judge Claire to improperly recommend dismissal of her complaint in that case. See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1209 (9th Cir. 2006) (observing that the relevant harm must have been caused by the acts of defendants). Plaintiff's own description of the conversation she overheard indicates that it had nothing to do with the substance of her case. (See Pringle Decl. ¶ 124.)[5]

Accordingly, plaintiff's allegations do not establish the requisite minimum contacts for this court to have specific jurisdiction over the Idaho defendants. See also Trujillo v. Williams, 465 F.3d 1210, 1221-22 (10th Cir. 2006) (holding that the exercise of personal jurisdiction over Virginia corrections officials in New Mexico would offend traditional conceptions of fair play and substantial justice).[6]

---

[4] Plaintiff does not argue that Magnuson's appearance at a hearing in Pringle I by itself establishes specific jurisdiction.

[5] Plaintiff argues that it would be unfair for this court to require her to try this action in Idaho because the state would reincarcerate her on her outstanding parole violation. However, as Judge Nunley observed in transferring Pringle I to Idaho, plaintiff's counsel can represent plaintiff's interests in her stead and most litigation can occur without plaintiff's presence such that she may never need to travel to Idaho. See Pringle v. Gentry, No. 2:17-cv-02206 TLN AC, 2018 WL 3702313, at *5 (E.D. Cal. Aug. 2, 2018).

[6] Because the court concludes that it lacks personal jurisdiction over the Idaho defendants, it does not reach the

14

IT IS THEREFORE ORDERED that the Idaho defendants'
Motion to Dismiss (Docket No. 53) be, and the same hereby is,
GRANTED.  Accordingly, all of plaintiff's claims against
defendants Sandy Jones, Amanda Gentry, Noel Barlow-Hust, Judy
Mesick, Cindy McDonald, Mark Kubinski, and Elisa Magnuson are
hereby DISMISSED for lack of personal jurisdiction.

Dated:   August 27, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

other arguments put forth in the Idaho defendants' motion to dismiss.

15